BAUMGARTNER et al. v. BAUMGARTNER et al.—67 S. W. (2d) 154.

Eastern Section.   July 1, 1933.

Petition for Certiorari denied by Supreme Court, October 19, 1933.

Moore & Moore, of Chattanooga, for appellants.
Thach & Thach, of Chattanooga, for appellees.

SENTER, J. The original bill was filed in this cause by the complainants Mrs. Viola Baumgartner, Katherine Phillips, and Chris Baumgartner, against defendants F. C. Baumgartner, Chris Zhand, Ida Spearman, Walter Baumgartner, Grace Hester, Callie Baumgartner, L. N. Spears, P. H. Thach, and D. E. Tatum, and Harriett Baumgartner, a minor, and the city of South Pittsburg.

Mrs. Viola Baumgartner is the widow of C. Baumgartner, deceased, and the other two complainants and the minor defendant are children of C. Baumgartner and Viola Baumgartner. F. C. Baumgartner, Chris Zhand, Ida Spearman, Walter Baumgartner, Grace Hester, and Callie Baumgartner are the children of C. Baumgartner by his first wife. C. Baumgartner was the owner of several pieces of real estate, situated in South Pittsburg, Tennessee, at the time of his death, consisting of residences, lots, and business houses. After his death, there was a suit filed in the chancery court of Marion county, and in that case there was a consent decree which vested an estate for life in all of the real estate involved in the widow, Mrs. Viola Baumgartner, and the remainder in the eight children and one grandchild, each taking an undivided one-ninth interest in the remainder estate. It appears that defendants L. N. Spears and P. H. Thach had a lien on the interest or shares of F. C. Baumgartner, Chris Zhand, Ida Spearman, Walter Baumgartner, Grace Hester, and Callie Baumgartner for attorneys'. fees in the former chancery suit; said liens having been so decreed in said cause. The city of South Pittsburg was made a defendant because it claimed a lien on certain of the lots for sewerage improvements.

The original bill prays that all of the property be sold for cash under the orders of the court, in lieu of partition in kind among those entitled to share therein. The original bill avers that the property is of such a kind and character and so situated as not to be susceptible to partition in kind among the numerous parties in interest, and all incumbered by the life estate of Mrs. Viola Baumgartner. She joins in the original bill for the purpose of consenting to a sale of the property, and having her right and interest in the proceeds declared and paid to her.

The minor defendant filed a formal answer by guardian ad litem, but denied that the property could not be partitioned in kind. The city of South Pittsburg filed an answer setting up a prior lien on certain of the lots for sewerage improvements. The defendant Tatum joined in the answer of other defendants and specifically disclaimed any interest in the property or in the suit, claiming that his lien for attorneys' fees formerly decreed to him in the former suit had been fully discharged. All the other defendants, in a joint and several answer, denied that the property was so situated that it could not be divided among all the parties interested therein and subject to a life estate in the respective parcels in the widow, Mrs. Viola Baum-

gartner. Defendants Spears and Thatch admitted that they had liens on the shares of the defendants named for attorneys' fees, and that they then held, respectively, two twenty-sevenths interest in all the property, but subject to the life estate of the widow.

At the hearing of the cause, the chancellor ordered a reference to the master to take proof and report on the following items:

"First: What taxes, if any, on the property described in the original bill remain due and unpaid?

"Second: What repairs, if any, are required to put the property in substantially as good condition as when life estate of Mrs. Viola Baumgartner began?

"Third: Who are the owners of the premises sought to be sold and the respective rights, titles and interests of the parties therein and what share or part belongs to each?

"Fourth: Whether the premises are so situated that partition thereof cannot be equitably made or whether they are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned?

"Fifth: Whether there are any encumbrances on the premises not disclosed in the pleadings, and if so, what and to whom belonging?

"Sixth: What would be a reasonable minimum price for the premises?"

The clerk and master filed his report, and, on the matter of taxes on the property remaining due and unpaid, he reported by separate items State and county taxes, interest and penalty, and city taxes to the city of South Pittsburg, interest and penalty, covering the years 1930 and 1931, and certain street paving taxes or assessments to the city of South Pittsburg, amounting in the aggregate to the sum of $2,265.67. He further reported that the taxes on the property for the year 1932 were then due, but the amount thereof had not been proven.

On the second matter, the master reported that there are a number of the houses that need repairs and painting, but no proof as to what would be required to put the property in substantially as good condition as when the life estate of Mrs. Viola Baumgartner began. On the third item, he reported the respective shares and interest of the respective parties, including the heirs of Walter Baumgartner, who it appears had died and the cause had been revived in the name of his heirs. On this matter he reported that Katherine Phillips was the owner of three twenty-sevenths; Chris Baumgartner, three twenty-sevenths; Callie Baumgartner, four Twenty-sevenths; Chris Zhand, two twenty-sevenths; Ida Spearman, two twenty-sevenths; Grace Hester, two twenty-sevenths; P. H. Thach, three twenty-sevenths; L. N. Spears, three twenty-sevenths; and the five minor children and heirs of Walter Baumgartner together owned two twenty-sevenths— all of said respective shares and interests being subject to the life estate of the widow, Mrs. Viola Baumgartner.

The fourth item of the report is the item upon which is based the principal attack by appellant. By the fourth item, the master reported that the children and grandchildren by the first marriage were F. C. Baumgartner (said interest now owned by Callie Baumgartner), Callie Baumgartner, Chris Zhand, Ida Spearman, and Grace Hester, and the five minor children of Walter Baumgartner, deceased, naming them, and the children by the second marriage, Katherine Phillips, Chris Baumgartner, and Harriett Baumgartner. Under this item the master then sets out in detail the respective parcels of the property, the character of improvements thereon, and the location. The master then reports under this item as follows:

"Said property cannot be advantageously partitioned in kind to each individual heir, but the Master reports that said property could be advantageously partitioned so as to set aside as a whole the two-thirds ($\frac{2}{3}$) interest going to the six (6) heirs and the children of said six heirs, children and grand-children of C. Baumgartner by his first wife, and the interest that P. H. Thach and L. N. Spears have acquired as set out in the shares going to the heirs of C. Baumgartner by his first marriage.

"And the Master further reports that the property can be so advantageously partitioned in kind as to give to Katherine Phillips, Chris Baumgartner, Harriett Baumgartner, each an undivided one-ninth ($\frac{1}{9}$) interest in said property, all of said property to be subject to the life estate of the widow of C. Baumgartner, and also subject to the life estate of the widow of Walter Baumgartner, deceased.

"The adult heirs of C. Baumgartner, deceased, by his first wife, and L. N. Spears and P. H. Thach are willing to have said property partitioned so as to allot an undivided two-thirds ($\frac{2}{3}$) interest to the heirs and owners of said undivided two-thirds ($\frac{2}{3}$) interest collectively.

"It is manifestly to the advantage of the parties that said property should not be sold at the present time. (See deposition of Ida Spearman, page 628; Deposition of N. S. Baumgartner, page 8; Deposition of Fred Baumgartner, page 9.)"

By the fifth item the master reports that the proof does not disclose any incumbrances on the property other than the taxes reported under item 1 and the liens of Spears and Thatch. By the sixth item the master reports as to the reasonable minimum value as shown by the evidence cited in the report. He sets out the value of the respective parcels and fixes same at $18,500 in the aggregate.

The complainants filed exceptions to certain items and portions of the master's report, and specifically excepted to so much of the report as reported taxes due and owing to the State, county, and city of South Pittsburg in the aggregate amount of $2,265.67, and predicated the exceptions on the ground that there was no proof to show that the several items of taxes referred to are, in fact, due either to the State and county or the city of South Pittsburg, and because

the evidence and exhibits show that the purported assessments for taxation for said years are void for want of description, for want of valuation, for want of dollar mark or decimal point, and are not assessments for taxation of the property described in the bill, and except to the items reported under said item 1 as to the amount of the State and county taxes for the year 1930, and further except on the ground that there was no valid assessment of the taxes against this property by the city of South Pittsburg, for the reason that said assessment is merely copied by the city from the county trustee's books. and are therefore void, and except to the other items reported by the master under item 1; that the claim of the city of South Pittsburg of $334.96 as sewerage assessment made in 1919, with interest thereon of $234.47, for a period of about twelve years. was barred by the statute of limitations before the death of Christian Baumgartner and before the property descended to the parties to this suit, even if the assessment was valid when made. Exceptions were also taken to the report of the master under item 1 with reference to street paving tax of $137.30 and $286.12, respectively, on the grounds that it is not shown that the property was liable for the payment, and because the same was not a tax but an assessment to abutting property. and not an item chargeable against the life estate. and, if owing at all, would be a debt chargeable against the remaindermen as well as the life tenant.

The exceptions to the report by complainants under item 4 are as follows:

"Complainants except to that part of Item Four of the Master's report. wherein it was reported that the property described in the bill could be advantageously partitioned so as to set aside as a whole the two-thirds interest going to six heirs and the children of said six heirs, together with the interest of P. H. Thach and L. N. Spears in one lot, and the interest going to three heirs in another lot. both subject to the life estate of the widow, because:

"(a)   This question does not arise under the pleadings in this case.

"(b)   This question was not referred to the Master.

"(c)   A division of the property into two lots of this kind, each lot left encumbered with the life estate of the widow, could only be made by agreement between the parties and none of the parties have agreed to such division. The court has no power to compel the parties to agree.

"(d)   All of this property being encumbered by the life estate of the widow. partition can be had only by a sale and not by division into lots."

There was a petition filed in the cause by certain of the defendants. setting forth the alleged interests of the respective parties, and that Mrs. Viola Baumgartner, the widow, was chargeable under the law with paying the taxes on all the property in which life estate had been

vested in her, and in keeping the same in repair, and alleging that she had failed to pay the taxes, State, county and municipal, on this property, for the years 1930 and 1931, and had permitted said taxes to become delinquent and interest and penalties to accrue. The petition also charges that the property had not been kept in repair; that it needed painting, and a part of the property was becoming dilapidated; that Mrs. Viola Baumgartner, as the life tenant, is chargeable with the duty of keeping the property in repair. The petition also charges that the life tenant is not keeping the property insured against loss by fire for the benefit of the remaindermen. The petition alleges that a receiver should be appointed to take charge of the property, rent the same out, pay the taxes, put the same in repair, insure the property, and protect the interest of the remaindermen, and prays for the appointment of a receiver.

Upon the coming in of the master's report, and the exceptions filed thereto, the chancellor overruled the exceptions of the complainants to item 4 of the master's report on all matters and questions under said item 4, for the reasons and on the grounds as set forth in the memorandum opinion by the chancellor and filed with the record. In the memorandum opinion filed, after setting out the report of the master under item 4, and the exceptions filed thereto, the chancellor stated as follows:

"The proposition is not to divide the property into two lots, but to give to each of the widow's children, viz., complainants Katherine Phillips and Chris Baumgartner and the defendant Harriett their share in severalty, and to set off the remaining two-thirds to the heirs by the first wife, and those claiming under them in common. There is no exception that such a partition cannot be equitably and advantageously made. If the three heirs by the last wife received their shares in severalty, they cannot complain that the others received their shares in common.

"But the exceptions state that none of the parties have agreed to such a division. But the Master reports that all of the adult owners of the two-thirds interest have given their assent, and the correctness of this statement of fact is not questioned by any exception supported by reference to evidence. There remains however, the question as to the minor heirs of Walter Baumgartner. Being minors, they are not competent to give their assent. But I think that by section 9168 of the new Code (section 5013 of Shannon's Code), the court has power to assent for them and I think under the evidence this is a case where such assent should be given."

The learned chancellor, in his opinion filed, then proceeds to dispose of the question being made under ground (d), to-wit: "(d) All of this property being encumbered by the life estate of the widow, partition can be made only by sale and not by division into lots."

As stated by the learned chancellor, this is not strictly a ground of exception to the master's report. It is, in fact, but the statement of a proposition of law, which, if correct, shows that the fourth item of reference was not a proper matter for reference at all, and that the master's report thereon would be immaterial and ineffective. The chancellor then proceeds to deny the soundness of this ground of the exception, and in doing so cites the case of Bierce v. James, 87 Tenn., 538, 11 S. W., 788, and recognizes that that was a proceeding for the sale of land for partition involving curtesy, and wherein there is contained a review of the history of Tennessee legislation upon the subject of partition and wherein it is held that tenants in common of a remainder estate are entitled to a partition in kind whether the preceding estate is one of dower, curtesy, *or other life estate.* Attention is directed to the action of the Supreme Court in Bierce v. James, supra, wherein the court interpolated the word "or," and that it will be noted that the Code of 1932, section 9165, substituted "or" for "and," making the section read as follows:

"Any person having an estate of inheritance, or for life, or for years, in lands, and holding *or* being in possession thereof, as tenant in common or otherwise, with others, is entitled to partition thereof, or sale for partition, under the provisions of this chapter."

By section 9166 of the Code of 1932, it is provided:

"The fact that the premises are subject to a life estate by dower or curtesy, or to an encumbrance by mortgage or otherwise, will not affect the right."

We agree with the holding of the chancellor that the above-quoted provisions are not intended to limit the character of life estate held to dower or curtesy, and that section 9196 more plainly implies that there may be such partition. Said section reads as follows:

"Such judgment and partition will not affect any tenants, or persons having claims as tenants, in dower, by the curtesy, or for life, to the whole of the premises, nor preclude any person, except those specified in the last section, from claiming any title to the premises, or from controverting the title or interest of the parties between whom the partition has been made."

We also agree with the learned chancellor in construing the holding in Holt v. Hamlin, 120 Tenn., 496, 111 S. W., 241, 246, and Jordan v. Jordan, 145 Tenn., 378, 239 S. W., 423, and that these cases do not purport to overrule the holding and construction given in the case of Bierce v. James, supra, and that there was no occasion to consider Bierce v. James in the two cases referred to. In Holt v. Hamlin, after setting out the two sections of the Code referred to, it is said by the court:

"It is perceived from the parts of the two sections which we have indicated by italics that a difference is made between the case of one who holds an estate for life 'in any individual share of the premises'

and one who owns such an estate 'in the whole of the premises;' the former being bound, and the latter not bound. This clearly indicates that one who owns a life estate in the whole of the premises does not enter into the scheme of partition at all; that such one is neither entitled to its benefits nor subject to its burdens.''

We further agree to the conclusion reached by the learned chancellor, wherein he states: ''This is not to say that the owners of a remainder interest do not have the right to partition in kind. On the contrary, it recognizes that they do have the right to such partition, but states that a life tenant does not, and that when the remaindermen have made partition, the life tenant's interest does not enter into it and is not affected by it.''

By the first assignment of error it is contended that the chancellor erred in holding that complainants were not entitled to a sale of the property in lieu of partition in kind and in dismissing the bill.

By the second assignment it is said that the court erred in overruling complainants' exceptions to the fourth item of the master's report, to the effect that the property could be divided by leaving the interest of eleven of the remaindermen held in common in certain property and the interest of three of the remaindermen in common in the whole property.

We have already considered the question made under subdivision (d), with reference to the property being incumbered by the life estate of the widow, and wherein it is contended by appellant that partition can only be made by sale and not by division into lots. Under these assignments of error, it is the contention of appellant, first, that, when a partition in kind cannot be had between the owners, a sale for partition is an absolute right. We think the fallacy of this contention is in the fact that the master did not report that this property was not susceptible of a partition in kind. The master specifically reported that it was, and supported his report on that subject by reference to the evidence. The chancellor concurred in this finding by the master. It is true that the master did not report that the property could be divided in kind by setting aside to each person interested certain specified property, or that each of the persons interested could be allotted separate parcels. What the master did report on this subject was that the property was of such a character and was so situated that two-thirds of the property could be set aside in kind to the children (and those claiming under them), by the first marriage, and that they expressed a desire to have such a division made, and consented thereto. The master then reported that the remaining parcels, which would equal one-third of the whole estate, could be partitioned in equal shares, in value, among the children by the second marriage. This would constitute a division in kind, and, according to the master's report, and the decree of the chancellor, so as not to damage or prejudice

the rights of complainants, or the children of the second marriage and the widow. While we fully agree with the contention made by appellants that tenants in common are entitled to a partition in kind as a matter of right, without regard to the effect such partition may have when set apart in severalty, at common law (Helm v. Franklin, 5 Humph., 404; Reeves v. Reeves, 11 Heisk., 669), and further that, where the evidence shows that the property is not capable of being divided in kind, tenants in common, as a matter of right, are entitled to have the property sold for division (Helm v. Franklin, supra; Ross v. Ramsey, 3 Head., 17; Wilson v. Bogle, 95 Tenn., 289, 32 S. W., 386, 49 Am. St. Rep., 929, and cases cited), yet we are of the opinion that neither by the report of the master or the decree of the chancellor is such a right denied to the complainants in this cause. In the case of Reeves v. Reeves, supra, it was held:

"Although it appears to be the interest of one tenant in common that the land should be sold for partition, yet it is for the interest of the other that it should be divided between them. It is the right of a tenant in common to have a division, unless it is manifestly the interest of both that it should be sold. The partition will therefore be made."

██ In the present case the evidence supports the report of the master to the effect that a partition in kind and in severalty can be advantageously made to the second set of children out of the remaining one-third of all the real estate after setting out two-thirds thereof in value to the first set of children, and those holding under them, as tenants in common in said two-thirds. If there is a partition in kind, made in severalty to the second set of children, so that each would receive a one-ninth in value of the whole, we cannot see that they would have any cause of complaint that the other two-thirds of the property in value should be given to the first set of children as tenants in common, since the first set agreed to such a division in kind. It is too well settled to need the citation of authorities that, where the property can be partitioned in kind among the parties interested, the property should not be sold for a division, but should be partitioned in kind.

In the state of the pleadings the chancellor could not decree a partition in kind of this property among those interested therein, because the original bill prayed for a sale of the property for division, without an alternative prayer that the property be partitioned in kind among those interested therein. In this situation he gave the complainants opportunity to amend the bill so as to pray for a partition in kind in the alternative. Complainants declined to so amend, but prayed an appeal from the action of the chancellor in dismissing their bill and in not granting the relief prayed for; that is, a sale of the property for division.

██ By the second proposition in appellants' brief it is contended

that, when the only scheme of partition, other than a sale, that can be made, is the division of the property into two or more lots, and setting apart to some of the tenants in common, these separate lots to be still held by them in common, can these owners who are to continue as tenants in common in one or more of the lots of the property defeat a sale while failing or refusing to agree to the scheme of allotment? We do not think that this correctly states the question that is presented by the master's report and the decree of the chancellor. The first set of children contend that the property can be partitioned in kind, and agree to a scheme of partition whereby they would take as tenants in common the property allotted to them, which would be two-thirds in value of the whole estate, they representing two-thirds of the total interest, and that the other one-third in value can be partitioned in severalty by partitioning the remaining one-third among the three children by the second marriage, so that each of the three would receive their respective shares in separate parcels, if they so desired. Nor do the defendants, the first set of children, offer any objection to the remaining one-third being sold for division among complainants. The fact that all of the property is subject to the life estate of the widow does not alter this right, since the widow would still hold a life estate in the two-thirds allotted in common to the first set of children and a life estate in each of the remaining parcels constituting the other one-third.

We find no error in the action of the chancellor in overruling the exceptions to the master's report and in dismissing complainants' bill. The chancellor did not take any action on the petition and answer thereto for a receivership. Neither did the chancellor make any decree on the subject of the validity of the taxes and other charges against the property. The decree of the chancellor in dismissing complainants' bill and in denying to complainants a sale of the property is affirmed, and the cause is remanded to the chancery court of Hamilton county for such further orders and decrees as the chancellor may make with reference to the petition for receivership, and other undisposed of questions.

Appellants and sureties on the appeal bond will pay the cost of this appeal.

Heiskell and Anderson, JJ., concur.