ADRON MEDLEY and ALICE MEDLEY SNEL-GROVE, Complainants-Appellees v. BEVERLY M. MEDLEY, Defendant-Appellant, and LUKE MEDLEY, Defendant-Appellee. —454 S.W.2d 142.

Middle Section. September 15, 1969.

Certiorari Denied by Supreme Court April 20, 1970.

332

334

Eugene Jared and Arnold Cameron, Cookeville, for Appellees.

Beverly M. Medley, Nashville, for Appellant.

TODD, J. In this partition suit, a jury found that the property should be sold for partition, the chancellor decreed a sale, and one of the defendants, Beverly M. Medley, has appealed in error.

The complainants, Adron Medley and Alice Medley Snelgrove are the grandchildren and the defendants, Beverly M. and Luke Medley are sons of Zina A. and Sara Judd Medley who owned the land involved herein as tenants by the entireties. Upon the death of Zina A. Medley, the land became the property of his wife, Sara Judd Medley. Upon the death of Sara Judd Medley, her heirs consisted of two sons, Beverly M. Medley and Luke Medley, and two grandchildren, Adron Medley and Alice Medley Snelgrove, the children of Ralph Medley, a deceased son of Sara Judd Medley.

Thus the complainants each own a one-sixth interest and the defendants each own a one-third interest in the land involved in this suit.

The parties have the same proportional interests in certain undistributed personal property of Sara Judd Medley and/or Zina A. Medley, deceased, which is also a subject of this litigation.

On May 8, 1967, this suit was filed by the grandchildren, Adron Medley and Alice Medley Snelgrove, against

Beverly M. Medley and Luke Medley, seeking the partition by sale of certain land and ''all the jointly owned personal property of the parties.''

The defendant, Luke Medley, has made no appearance or defense herein, and pro confesso has been entered as to him.

On July 14, 1967, defendant, Beverly M. Medley, filed a plea in abatement wherein he alleged that on May 18, 1967 the complainants joined with him in a contract to allow one H. T. Vance, Sr., a real estate broker, to attempt to sell the land involved herein during the period from May 18, 1967 to September 18, 1967; that said Luke Medley had refused to sign the said contract; that said contract effectively abated the present lawsuit until September 18, 1967; that the solicitor for complainants was the son-in-law of the defendant, Luke Medley; that said relationship produced conflicting and antagonistic interests on the part of said solicitor; and that the suit was based upon collusion between complainants and defendant, Luke Medley.

On August 29, 1967, defendant filed an answer and cross bill wherein he admitted all of the allegations of the original bill except that he denied that any of the land or personal property needed to be sold for partition, averred that all the real property and part of the personalty could be partitioned in kind, that an auction sale would be highly prejudicial to his rights, that if sold the land should be sold at private and not public sale, and that he, the defendant, should be appointed special commissioner to sell the land at private sale.

On July 14, 1967 an order pro confesso was entered against the defendant. As a result of an appeal, an order

was entered in this Court on February 23, 1968 vacating the order pro confesso and remanding the cause for further procedings.

On May 17, 1968, defendant moved the court to direct that all issues of fact tendered by the plea in abatement be tried by a jury.

On June 3, 1968 defendant moved for leave to withdraw his answer and cross bill and file a demurrer.

On June 3, 1968, the following orders were entered:

"The Plea in Abatement filed by the Defendant, having been read, and argument as to its sufficiency having been heard on June 3, 1968, the Court is of the opinion that the plea is insufficient in law. It is, therefore, ordered by the Court that said plea be overruled. To which action of the Court the Defendant excepts.

\* \* \* \* \* \*

"In this cause, on June 3, 1968, the Defendant moved the Court to order all issues of fact tendered by his Plea in Abatement be tried by a jury, and, it appearing to the Court that said Plea fails to present any issues of fact, the motion is overruled. To which action of the Court, the Defendant, Beverly M. Medley, excepts."

"In this cause, on June 3, 1968, the Defendant, Beverly M. Medley, moved the Court for leave to withdraw his Answer and Cross Bill to file a Demurrer to the original Bill, which motion is denied. To which action of the Court, the Defendant excepts."

On June 5, 1968, complainants filed their answer to the cross bill, generally joining issue upon the allegations thereof.

On July 5, 1968, there was a jury trial before the chancellor at which the following issues were submitted to the jury, with the indicated responses from the jury:

"1. Are the lands belonging to the Zina Medley heirs of such description that it would be manifestly for the advantage of the parties that the same should be sold and the proceeds divided instead of partitioned in kind?

Answer: Yes X

No ___

"2. Is the personal property belong (sic) to the Zina Medley heirs of such description that it would be manifestly for the advantage of the parties that the same should be sold and the proceeds divided instead of divided in kind?

Answer: Yes X

No ___

"3. What is the approximate fair cash market value of the land under consideration?

Answer: $75,000.00''

Thereupon, the chancellor entered a decree providing as follows:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that said tract of land and said personal property be sold subject to 1968 county taxes, and the proceeds divided among the parties, and that the Clerk & Master shall sell the same according to law, on the premises, for cash on Wednes-

day, August 21, 1968, at 1:30 P.M. In the event the parties before the court agree to the employment of professional real estate brokers and auctioneers to conduct said sale as evidenced by their respective signatures on an agreement to be filed with the Clerk & Master prior to the sale, the Clerk & Master is authorized and empowered to employ such professional personnel as may be agreed upon by the parties at a commission not to exceed five (5%) per cent, without further orders of the Court.''

\* \* \* \* \* \* \*

''The personal property to be sold consists of certain items of personal property, including some farming tools, and the household effects of Zina A. Medley and Sara Judd Medley, both deceased, which personal property is presently located on the above described real property.

''The Clerk & Master will report her action to the next term, or sooner, until which time all further questions are reserved, especially questions relative to the distribution of the proceeds of the sale.''

On August 3, 1968, defendant filed a motion for a new trial on 19 grounds.

On August 19, 1968, defendant filed an amended motion for a new trial increasing the number of grounds to 23.

On August 20, 1968, defendant moved in arrest of judgment on six grounds.

On September 12, 1968, an order was entered overruling the motion for a new trial and granting appeal in the nature of a writ of error.

On the same date an order was entered overruling the motion in arrest of judgment in which order the defendant "reserves his exceptions."

Defendant's assignments of error numbered one through twenty-three are identical with the grounds recited in his motion for a new trial. An additional, unnumbered assignment complains of the overruling of defendant's motion in arrest of judgment upon the six grounds recited in the motion.

■ The first, second and twenty-first assignments of error are as follows:

## I

"Because there is no evidence to support the verdict.

## II

"Because the verdict is based upon mere opinion evidence of the witnesses without sufficient facts upon which to predicate their opinions.

\* \* \* \* \* \*

## XXI

"Because the evidence does NOT sustain the Burden of Proof resting upon the Complainants."

The statute authorizing this proceeding is as follows:

"*23-2128 Sale for division.*—Any person entitled to a partition of premises, under the provisions of secs. 23-2101—23-2127, is equally entitled to have such premises sold for division, in the following cases:

(1) If the premises are so situated that partition thereof cannot be made.

(2) Where the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned.''

The issues of fact, quoted supra, relate only to section (2) of the foregoing statute. Thus the inquiry at this time must be whether there is sufficient, or satisfactory evidence to sustain the verdict of the jury that ''it would be manifestly for the advantage of the parties that the same should be sold and the proceeds divided instead of partitioned in kind.''

Defendant insists and cites authority for the proposition that evidence to support a sale for partition must be ''sufficient,'' meaning the clearest and most satisfactory proof, and that mere opinions unsupported by facts are insufficient.

It is uncontroverted that the land is a ''hill farm'' composed of between 450 and 500 acres of ''rolling land,'' approximately bisected by a public road, that there is about ½ mile frontage on each side of the road, that there is a valuable residence, tenant house, barn and silo on one side of the road and another barn on the opposite side of the road, and that water for the house and adjoining barn is principally obtained by pumping from a large spring across the road.

The complainant, Adron Medley, testified that he was thoroughly familiar with the details of the property, that the main source of water is a spring across the road from the residence, that a well at the residence taps the same source, that there is a ''water hole'' near the house, that most of the land is covered by timber or too precipitous or rocky to be tilled, that some of the land is useable for hay, tobacco and pasture, and the property is more valu-

able as a whole than it would be divided into parts; that the farm has once been used for a dairy, and could be again used for the same purpose.

Complainants' witness, O. D. Roberts, a real estate broker, testified that he was familiar with the land, that it would not be practical to divide the land, that the land would bring more money as a whole than in parts, and that it would be to the advantage of the owners to sell it as a whole.

Complainants' witness, James L. Lacy, a real estate broker, testified that he was familiar with the land, that it is "fairly rough land" with some good land, that it is strictly a cattle farm, that the farm buildings are grouped at one location, that it would be almost impossible to divide the land proportionately among the owners because of the close grouping of buildings, that the value of the farm would be decreased by dividing it, and that "it would be manifestly in the best interest of the heirs that the land be * * * sold for partition."

Defendant, Beverly M. Medley, testified that the barn on the west side of the road is worth $6,000.00, that the barn and silo on the east side of the road are worth $10,000.00, that the house on the east side of the road is worth $20,000.00, that the entire farm is worth $100,000.00, that the farm is useful for a cattle farm, or a dairy farm, or raising corn, sheep or tobacco, that the farm could be divided into two farms, that the residence could be set apart on a tract separate from either of the barns, and that the farm could be divided proportionately among the parties, or by equalizing disproportion with cash payments.

Defendants' witness, H. N. Hargrove, a real estate broker, testified that he was familiar with the land, that the house is worth $20,000.00, that the barn and silo are worth $8,500.00, that the single barn is worth $4,000.00, that the land on the east side of the road is worth $31,200.00, and the land on the western side of the road is worth $15,800.00, that the entire farm is worth $79,575.00, that the farm is best adapted to cattle raising, that the most profitable way to sell the farm would be in two tracts, that he knows of no way to divide the farm into parts of one-third, one-third, one-sixth and one-sixth, and that it would be manifestly in the best interest of the parties to sell the farm for division, rather than to try to divide the farm among them.

The testimony just summarized contains adequate factual data to support the opinions of the witnesses, the findings of the jury and the chancellor that "it would be manifestly for the advantage of the parties that the (land) should be sold and the proceeds divided instead of partitioned in kind."

The first, second, and twenty-first assignments of error are respectfully over-ruled.

■ The third assignment, that the verdict is against the law applicable to the case, is not appropriate for consideration in this Court. Templeton v. Quarles, 52 Tenn.App. 419, 374 S.W.2d 654 (1953).

■ The fourth assignment, that the verdict is against the greater weight or preponderance of the evidence, presents no question for consideration by this Court in this case. Leach v. Leach, 52 Tenn.App. 606, 376 S.W.2d 739 (1964), Howard v. Dewey Motor Co., 50 Tenn.App. 631, 363 S.W.2d (1961).

■ The fifth and sixth assignments of error complain of the holding of the trial court that the plea in abatement failed to present any issues of fact, the refusal of the trial court to submit the plea in abatement to a jury trial, and the action of the trial court in overruling the plea in abatement.

The first ground of the plea in abatement, was that the two complainants (each owning a one-sixth interest) had agreed with defendant Beverly M. Medley (owning a one-third interest) to list the property with a real estate broker without concurrence of the owner of the remaining one-third (Luke Medley). The agreement, exhibited to the plea in abatement begins with the following paragraph:

"We, Beverly M. Medley, Ralph Adron Medley, Alice Medley Snelgrove and Luke Medley, certify that, Beverly M. Medley owns One Third, Ralph Adron Medley owns One Sixth, Alice Medley Snelgrove owns One Sixth and Luke Medley owns One Third of the following described Real Estate, to*W*itt:"

Said instrument also contains the following:

"We hereby *lst* the above described real estate with H. T. Vance, Sr., a licensed Real Estate Broker * * *"

* * * * * *

"We hereby grant the said H. T. Vance, Sr., the right to sell said estate * * *"

* * * * * *

"In testimony hereof, however, we have hereunto set our signature * *"

Said instrument contains purported signatures of Beverly M. Medley, Ralph Adron Medley, and Alice Medley Snelgrove. There is a fourth line, evidently intended for the signature of Luke Medley, but no signature appears thereon.

It is not expressly stated in the instrument, but it is undeniably evident that each party intended that his or her assent to the agreement should be in consideration of and conditioned upon the assent of all other parties named in the instrument. Until Luke Medley signed the instrument, it was not a contract and unenforceable.

In 17 C.J.S. Contracts sec. 62, p. 734 is found the following:

"It has been held in numerous cases that, where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed it. * * *"

The only other ground of the plea in abatement is that the solicitor for complainants is the son-in-law of Luke M. Medley, a defendant who has made no appearance, and the averment on information and without any other factual basis that:

"* * * this suit is based on COLLUSION between the Defendant, Luke Medley, and the Complainants to invoke the POWER of this Honorable Court to deprive him of the fair market value of his one-third interest in the land by the means of an AUCTION sale of the land."

These averments are simply not grounds for abatement. Even if the defendant Luke Medley has for any reason encouraged or fostered the present suit, to do so

is his right under the statute, and no improper or unlawful or dishonest methods or purposes are alleged. The plea in abatement was insufficient in law, presented no material issues of fact; and a demurrer to same, if filed, should have been sustained. Therefore, there can be no reversible error in the refusal to submit its allegations to a jury or in overruling it. Sec. 27-117 T.C.A.

The fifth and sixth assignments of error are respectfully overruled.

■ The seventh assignment of error complains of the refusal of the chancellor to allow the defendant to withdraw his answer and cross bill and to file a demurrer to the original bill. Gibson's Suits in Chancery, Fifth Edition, Vol. I, sec. 240, p. 292, after listing the statutory order of defensive pleadings states:

> "The adoption of any one of the foregoing defences is a waiver of the right to set up any defence that precedes it; but, *where strong reasons can be shown,* especially *where the defendant is a person under disability,* the Court will allow the answer to be withdrawn, and a demurrer filed; or a demurrer to be withdrawn, and a plea in abatement filed." (emphasis supplied)

In the present case, the grounds of a demurrer would be the same as those set out in the motion in arrest of judgment, treated hereafter, hence there is no ground for disturbing the discretionary ruling of the chancellor.

The seventh assignment of error is respectfully overruled.

■ The eighth and ninth assignments of error and the first ground of the motion in arrest of judgment point

out that the first issue of fact submitted to the jury (supra) refers to "the lands belonging to the *Zina Medley heirs*," whereas the parties to this case actually inherited their respective interests in the land from *Sara Judd Medley*. As previously pointed out, the land was formerly owned by both Zina and Sara Judd Medley, and the heirs of Zina Medley are the identically same persons as the heirs of Sara Judd Medley. In fact, the parties to this suit, are made such in dual roles, the heirs of Sara Judd Medley as to the real estate and the distributees of Zina Medley as to the personalty.

Unquestionably, the jury understood what land was referred to in the issue of fact, no prejudice was likely to result, and none has been shown. The chancellor was justified in basing his decree upon the response of the jury.

The eighth and ninth assignments of error and the first ground of the motion in arrest of judgment are respectfully over-ruled.

■ The tenth assignment of error complains of the refusal of the chancellor to enter a decree composed by defendant, rather than the decree that was entered. The principal feature of the rejected decree is the appointment of defendant as special commissioner to sell the land at private sale of land and/or fixing a minimum sale price, but no authority has been cited or found which *requires* a chancellor to appoint one of four tenants in common to act as special commissioner or *requires* a chancellor to submit property to private sale or to fix a minimum price of sale where all parties are sui juris. These are discretionary decisions of the chancellor which

are not to be disturbed in the absence of palpable abuse or misuse of discretion, which does not appear herein.

The tenth assignment of error is respectfully over-ruled.

■ The eleventh, seventeenth, and twenty-second assignments of error complain that the decree of sale did not fix a minimum sales price. In Gibson's Suits in Chancery, Fifth Edition, Vol. 2, secs. 1115, 1116, pp. 414, 415, 416 are set out specimen forms for Report of Clerk and Master as to a Sale and Decree for Sale. In said report a minimum sales price of $40,000.00 is recommended, however the same report presents an offer to start the bidding at said minimum price. Under such circumstances, there are advantages and no disadvantages to the inclusion of a minimum sales price in the decree. Said specimen Decree for Sale contains the following:

"The master will not sell said tract for less than forty thousand dollars. (This minimum may be omitted when all parties are sui juris.)" Gibson, supra, p. 416.

The outstanding authority on chancery practice in Tennessee thus *requires* a minimum sales price only when one or more parties are not sui juris. It does not appear that any party to this case is not sui juris.

Fixing a minimum sales price in a decree of sale produces the possibility of a sale wherein no bid is received equal to the minimum, thereby requiring the delay and expense of amending the decree and holding another sale. There is no showing that a fixed minimum sale price would be to the advantage of the parties. If the property

must be sold, it must be sold for the best price it will bring, regardless of what that price might be.

In 68 C.J.S. Partition sec. 181, p. 294 is found the following:

"Where the statute so requires, the court must fix an upset or minimum price; apart from statute, it has been held that it may do so, but also that, in the absence of the parties' consent, it may not fix an upset price."

In Tennessee, there is no statutory requirement for an "upset" or minimum price in a decree of sale, and there is no mandatory rule *requiring* such under the circumstances of this case. The inclusion or omission of such a provision in a decree herein was discretionary with the chancellor. The exercise of such discretion will not be disturbed except in the case of abuse, misuse, or injustice, none of which is shown herein.

The eleventh, seventeenth and twenty-second assignments of error are respectfully overruled.

By his twelfth assignment of error, defendant insists that sec. 23-2128 T.C.A., quoted supra, is unconstitutional because it forces an owner to sell his property at less than its market value. Authorities cited by defendant relate to taking of private property by eminent domain, and not to division of property at the suit of one of the cotenants.

The parties to this case hold an estate in coparcenary, which arises when several heirs take by descent from the same ancestor. In such case, all of the coparceners, whatever their number, constitute but one heir, have but one estate among them and are connected by unity of interest and unity of title. The estate never arose by purchase,

but only by descent, therein differing from other cotenancies. 86 C.J.S. Tenancy in Common sec. 3, p. 362. For this reason, much that defendant urges about the constitutional rights of a property owner are inapplicable to the present case. A coparcener holds an interest in land subject to the rights of the other coparceners, one of which is the right to have a forced sale for division if the statutory conditions apply.

In 68 C.J.S. Partition sec. 126, p. 189 is found the following:

"*Constitutionality of statutes.* The constitutionality of statutes authorizing a sale has been upheld as against contentions that they violated constitutional provisions against taking the property of one person for the private use of another, or deprived parties of their property without due process of law, or deprived them of the right of freedom from compulsory alienation of property. It has been held that there is no limitation on the power of the legislature to provide for the sale of lands which may not be partitioned."

Decisions from a number of states are cited in support of the foregoing, and none to the contrary.

Defendants' twelfth assignment is respectfully overruled.

██ ██ Defendants' thirteenth assignment of error complains of the refusal of the chancellor to submit to the jury the issue:

"1. Can the land be partitioned in KIND, or divided into shares between the respective owners?"

Under sec. 23-2128 T.C.A., quoted supra, there are two conditions under either of which a contenant is entitled

to have a sale. If either condition exists, it becomes immaterial whether the other exists. That is, even if the jury had found that the land could be partitioned in kind, nevertheless the sale of the land could be properly ordered if it were manifestly for the advantage of the parties to do so.

The mere fact that land may be partitioned among contenants is not conclusive that a sale should not be ordered. If by partition the value of all shares would be less than the value of the tract as a whole then partition would be manifestly inequitable and a sale should be decreed. Summers v. Conger, 43 Tenn.App. 286, 307 S.W.2d 936 (1957), Bevins v. George, 36 Tenn.App. 308, 255 S.W.2d 409 (1952).

The jury found that it was manifestly for the advantage of the parties that the land be sold. Therefore, the issue of whether the land *can* be partitioned in kind becomes immaterial, and the error, if any, in refusing to submit the issue to the jury becomes harmless. Sec. 27-117, T.C.A.

Defendants' thirteenth assignment of error is respectfully overruled.

█ The fourteenth and the nineteenth assignments of error complain of the form of the first two issues submitted to the jury, quoted supra, on the ground that the questions are leading, suggestive to the jury as to the answers, and contain conclusions of fact. 89 C.J.S. Trial secs. 545-547 cited by defendant, does not support this assignment, but rather supports the propriety of the form of question and alternative "yes-no" response used in this case.

352

The fourteenth and nineteenth assignments of error are respectfully overruled.

██ The fifteenth assignment of error complains that the decree of sale does not show that the court approved the verdict of the jury.

The decree of sale contains the following:

"After due deliberation, the jurors returned into open court, and on their oaths, said that they had agreed on the issues, that their answer to jury issue 1 was 'Yes,' that their answer to jury issue 2 was 'Yes,' and that their answer to jury issue 3 was $75,000.00. The jury was thereupon discharged by the Court by consent of the parties.

"*In addition to the above findings* by the jury, *the Court further finds,* from the proof, that the land and the personal property in question is presently owned by the parties to this lawsuit, and no others, in the following proportions: * * *" (emphasis supplied)

A reasonable interpretation of the foregoing is that the chancellor approved and adopted the findings of the jury, and in addition thereto, made the other finding as recited. Furthermore, the order of September 12, 1968, quoted supra, specifically overrules the motion of defendant to set aside the verdict of the jury, which order by its tenor and terms implies and constitutes an approval of the findings of the jury.

These two actions constitute approval of the verdict by the chancellor and satisfy the requirements of authorities cited by defendant.

The fifteenth assignment of error is respectfully overruled.

■■ The sixteenth assignment of error is:

## XVI

"The Court erred in ordering the land sold at auction, because section 23-2128 of the Tennessee Code Annotated does not restrict the court from having a private sale."

This assignment is directed not at the verdict of the jury, but at the exercise of discretion on the part of the chancellor in directing an auction, rather than a private sale. The statute does not *require* a private sale, hence there can be no reversible error in ordering a public sale. Defendant testified that a better price could be obtained at private sale, but no others so testified. There is evidence that considerable effort has already been made to sell the property privately, without success. If an attractive offer is available for private sale, it may yet be presented at any time before the final confirmation of the results of the public sale.

The sixteenth assignment of error is respectfully overruled.

The seventeenth assignment has been discussed heretofore.

■■■■ The eighteenth assignment of error complains of the alleged misconduct of a juror. The affidavit of the defendant, Beverly M. Medley, filed in support of his motion for a new trial states that while the jury had this cause under consideration, he saw the complainant, Adron Medley, in conversation with a juror in the corridor outside the courtroom.

In the case of Davidson v. Manlove, 42 Tenn. 346, 349 (1865), the Supreme Court held that there was no evi-

dence to support a verdict and reversed. However the Court also said:

"2. It is insisted, the judge, in refusing to grant a new trial, for the improper conduct of defendant with the juror while the jury had the case under consideration, was [committed] error, for which this court will reverse. In the view we have of the law governing this case, it is unnecessary for us to determine this question at this time. Such conduct on the part of a suitor is highly improper and reprehensible, and should call forth the severe censure of the court. Men must not be permitted to tamper with jurors before whom their suits are being tried; and being seen in close conversation with them during the trial, or while they are considering of their verdict, the circumstance, unexplained, is sufficient to authorize circuit judge to grant a new trial, and to subject the party to punishment by the court, for contempt. The fountains of justice must be kept pure and free from suspicion, or the citizen will lose all respect for the laws, and the rights of person, and property will become insecure. Suitors and jurors must not place themselves in a position where their conduct creates suspicion." 42 Tenn. 349, 350.

In the case of Brown v. Pippin, 59 Tenn. 657 (1874) the Supreme Court said:

"A combination of three circumstances in this case constitutes a ground of reversal that constrains our action.

"Nicholas P. Hale, one of the jury that tried the case, is the uncle of Joshua Hale, the assignee of the judgment that is involved.

"On the evening before the verdict was rendered, this juror said to Jane M. Hale, ''that all would see that Josh and Pippin would gain it.'

"On the day the verdict was rendered, and after the jury had heard the evidence, and the argument of counsel, Pippin, the assignor of the judgment, was seen in an animated conversation with Hale, the juror; and when approached, they walked off together.

"When Hale was taken as a juror, it had escaped the recollection of the plaintiffs in error that he was an uncle of Joshua Hale." 59 Tenn. at p. 657.

As stated, it was "a combination of three circumstances" which formed grounds for reversal. Whether one of the circumstances, standing alone, required reversal was not indicated by the Court.

In the present case, the occurrence is not deemed ground for reversal for several reasons, viz:

(a) The alleged misconduct was observed by the defendant-appellant prior to the rendition of verdict, but it was not called to the attention of the chancellor until motion for new trial. It was the duty of the defendant to bring the matter to the attention of the chancellor immediately by motion for a mistrial. It was not the prerogative of defendant to reserve this incident as an "ace in the hole" to use in event of an unsatisfactory verdict.

In the case of Tinkle v. Dunivant, 84 Tenn. 503 (1886), the Supreme Court affirmed a jury verdict and held that if a juror is tampered with by a party and same is known to opposing counsel, the objection should be made as soon as counsel is apprized of the fact.

In Manufacturing Co. v. Morris, 105 Tenn. 654, 58 S.W. 651 (1900) the Supreme Court declined to reverse for a defect in the oath of the jury and said:

"The rule is that in such cases a party may not sit quietly by and take his chances on a favorable verdict, and afterwards take advantage of such an infirmity in the proceedings." 105 Tenn. at 660, 58 S.W. at 653.

In Claiborne v. Solomon, 187 Tenn. 634, 216 S.W.2d 339 (1948) our Supreme Court affirmed a jury verdict in spite of certain improper comments of a juror, and said:

"No motion was made for a mistrial * * * the plaintiff waived any rights she might have had by proceeding with the trial and not raising the question until after the jury had decided the case against her." 187 Tenn. at 645, 646, 216 S.W.2d at 344.

In Luchessi v. Barnard, 7 Tenn.App. 353, (1928), this Court held that a motion for mistrial, entered during the trial but two days after the proof was all in, came too late. This Court said:

"Motion to discharge jury pending trial must be made as soon as ground for motion discovered, as for instance, anything going to the bias or prejudice of the jury. 35 Corpus Juris Sec. 490, page 421." 7 Tenn. App. at 356.

(b) The defendant did not employ all his remedies in support of his motion for a new trial. The accused juror might have been summoned for examination before the chancellor. Other jurors might have been summoned to ascertain whether they were influenced by the alleged misconduct. This was not done.

(c) The alleged misconduct is not as serious a matter in the present case as it might have been in another case with other issues, such as a criminal prosecution or a damage suit wherein the verdict of the jury, if affirmed, concludes the rights of the parties. In the present case, no party has been divested of his property by the verdict. In one aspect, the verdict is advisory to the chancellor, who must determine in the final analysis whether a sale, when made, is for the best interest of the parties and should be confirmed.

The eighteenth assignment of error is respectfully overruled.

The nineteenth assignment of error has been heretofore discussed.

The twentieth assignment of error is that the evidence for the complainants does not correspond to the allegations of the pleadings. This assignment compains that the allegations of the original bill are vague, indefinite, argumentative and merely conclusions of the pleader, and that the chancellor erred in admitting specific evidence as to the terrain of the land, description of personal property, and distribution of estate, without correspondingly specific allegations in the bill.

Upon careful examination of the pleading and evidence, no ground is found to sustain the twentieth assignment, which is respectfully overruled.

The twenty-first and twenty-second assignments have been heretofore discussed.

The twenty-third assignment complains that the property was not ordered sold in at least two tracts. The

witness M. N. Hargrove did state his opinion that the land should be sold in two tracts. There is some factual basis for this opinion; i. e., that the land is approximately bisected by a public road, so that each half fronts approximately one-half mile upon the public road. There is a barn on one side of the road and a house, barn and silo on the other side of the road.

There is other opinion evidence that the farm should be sold as a whole. Supporting this opinion are the facts that the tillable land is limited, and that the main supply of water is a large spring from which water is pumped across the road so that both halves of the farm are, to some degree, dependent upon said spring.

In view of the conflicting evidence on the subject and the fact that the land may be offered both in parcels and as a whole without delay or additional expense, upon remand, the new order of sale should direct that the property be offered in two parcels for separate sale; i. e., the portion of the land east of the road as one parcel and the portion west of the road as a separate parcel; and that the land also be offered for sale as a whole. The sale which produces the greatest aggregate price for the property would, of course, be preferable for confirmation.

To the degree indicated, the twenty-third assignment is sustained.

By an unnumbered assignment, defendant complains of the action of the chancellor in overruling his motion in arrest of judgment on six grounds, the first of which has already been discussed. The remaining grounds are as follows:

## 2.

"Paragraphs IV and V of the original Bill do NOT contain sufficient averments of fact to constitute a cause of action.

## 3.

"The allegations of paragraphs IV and V of the original Bill fail to aver sufficient facts to show that the Land and Personal Property cannot be partitioned in kind.

## 4.

"The allegations of paragraph IV and V of the original Bill are devoid of averments of fact to support the DECREE for sale of the land and Personal property.

## 5.

"The allegations of paragraphs IV and V of the original Bill are merely conclusions of law and fact of the pleader.

## 6.

"The allegations of paragraph IV and V of the original Bill are vague, indefinite, and argumentative."

The original bill has been again examined in the light of these criticisms, and has been found to be sufficient for the purposes of this suit and the decree rendered herein.

 It is insisted that the personal property is not described with particularity in the bill, evidence or decree. This is understandable in the light of the fact that defendant Beverly M. Medley is the administrator of the estate of his mother, Mrs. Sara Judd Medley, who at

her death was presumptively in possession of the personal property and effects of herself and her deceased husband, Zina A. Medley. There is evidence that at least part of said personal property has been held by the probate judge to be the property of Zina A. Medley, rather than that of his widow. This would account for the failure of Beverly M. Medley to distribute the personalty as administrator of the estate of the widow. It is understandable that such personal effects were left in the possession of the widow at the death of her husband. Said personal effects, whatever they may be, are located on the land being partitioned, and seem to be property without a custodian at the present time. The chancellor adopted the only practical resolution of the matter, which was to authorize the clerk and master to take charge of and sell all such personalty of Zina A. and Sara Judd Medley as might be found on the land which was also to be sold. With the meager information furnished by the parties, this was all he could do.

The unnumbered final assignment of error is respectfully overruled.

Viewed as a whole, the case presents the regrettable but frequent situation in which heirs have been unable to attain a mutually satisfactory understanding about disposition of ancestral property. As to the personalty, it could hardly be contended that dishes, furniture, farm implements, and the like, could be proportionately divided among these parties.

One solution which recommends itself to the parties is the voluntary ascertainment of one third of the land and personalty for allocation in kind to defendant Beverly M. Medley, thus freeing the remaining two-thirds for sale

without further objection on his part. Under this record, and especially the finding of the jury, no such partial partition in kind could or should be ordered by the court without consent of all parties. See 68 C.J.S. Partition sec. 128, p. 199.

In the absence of such agreement, the complainants have a right to have the property sold for partition promptly. However, the possibility of an advantageous private sale ought not to be excluded, so long as such a sale does not delay the liquidation of complainants' interest.

Since the time of sale designated in the decree of sale has passed pending this appeal, it would be proper in the new order of sale for the chancellor to select a qualified real estate broker to act as special commissioner to sell the land and personalty at public or private sale within a short fixed period, the sale to be subject to confirmation by the court.

Upon remand, a new decree of sale will be entered, setting a date of sale, or, in the discretion of the chancellor, a period within which a court-appointed commissioner shall sell at public or private sale. Any public sale will offer the land in parts and as a whole as aforesaid. The chancellor will, of course, consider any pending offers for private sale before finally confirming a sale by public auction.

The verdict of the jury is affirmed. As modified herein, the decree of the chancellor is affirmed. The costs of this appeal will be paid out of the proceeds of the sale before distribution. The cause is remanded for further proceedings.

Affirmed as modified, and remanded.

Shriver, P. J. (M.S.), and Puyear, J., concur.