# FILED

October 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

| | |
|---|---|
| JAMES MILLER, | ) C/A NO. 03A01-9808-CH-00294 |
| | ) (Consolidated with case Nos. |
| Plaintiff-Appellant, | )   03A01-9808-CH-00295 and |
| | )   03A01-9808-CH-00296) |
| vs. | ) |
| | ) MONROE CHANCERY |
| MILLER BROTHERS FARMS, INC., | ) |
| LARRY L. MILLER, GARRY MILLER, | ) HON. EARL H. HENLEY, |
| and ALLEN MILLER, | ) CHANCELLOR |
| | ) |
| Defendants-Appellees. | ) AFFIRMED AND REMANDED |

JOHN W. CLEVELAND, CLEVELAND & CLEVELAND, Sweetwater, for Plaintiff-Appellant.

M. EDWARD OWENS, JR., LEWIS, KING, KRIEG, WALDROP & CATRON, P.C., Knoxville, for Defendants-Appellees, Larry L. Miller, Garry Miller & Allen Miller.

JEFFREY L. CUNNINGHAM, CARTER, HARROD & CUNNINGHAM, PLLC, Athens, for Defendant-Appellee, Miller Brothers Farms, Inc.

## O P I N I O N

Franks, J.

These appeals involve three consolidated cases, and our Opinion will consider the issues raised in the respective cases.

Andrew Miller owned and operated a family farm near Sweetwater, and when he retired, his four sons, James, Larry, Garry and Allen, incorporated Miller Brothers Farms,

Inc., ("Miller Bros."). Miller Brothers leased the farm land from Andrew Miller and purchased other farm land. When Andrew Miller died on July 14, 1992, he left his real property to his four sons as tenants in common. The land comprises 251.1 acres located on Glenlock Road in Monroe County. There are fifteen distinct improvements on the land, including four houses, two mobile home parks, six barns and three silos.

## PARTITION CLAIM

James Miller sued to partition the land as part of a three-count action for judicial dissolution of a corporation, breach of lease and partition of real estate.[1] The Commissioners ruled that the farm should be divided by four, and arrived at an approximate value of $178,000.00 for each one-fourth interest. They concluded that tract 4, had an approximate value of $173,000.00, and that this tract with 62 acres and a barn south of Glenlock Road, by this division, would have the least impact on the farm. They designated that James would receive this portion of the farm, and his three brothers would be vested with the title to the remainder of the farm as tenants in common. This appeal ensued.

James contends that the land cannot be partitioned into lots of equal value, and that the land should be sold for division with the proceeds divided equally between the parties.

A person who owns property with another as tenants in common is entitled to a statutory sale for partition if either one of two conditions exists:

(1)     If the premises are so situated that partition thereof cannot be made.

(2)     Where the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned.

T.C.A. §29-17-201.

The law favors a partition in kind over sale of property. "It is well settled that where real estate can be partitioned in kind among the parties interested, it should not be sold for division but should be partitioned in kind." *Glenn v. Gresham*, 602 S.W.2d 256

(Tenn. App. 1980); *Jeffers v. Shelton*, 634 S.W.2d 275 (Tenn. App. 1982); *Baumgartner v. Baumgartner*, 67 S.W.2d 154 (Tenn. App. 1933).

The burden of proof is on the party seeking the sale to show that one of the statutory grounds has been met. *Jeffers*, 275. This is a heavy burden. "Nothing short of the clearest and most satisfactory proof could justify the Court in ordering a sale against the protest of one of the tenants in common." *Reeves v. Reeves,* 58 Tenn. 669, 674 (1872); *Accord, McConnell v. McConnell*, 1986 WL 2147 (Tenn. App. 1986).

Plaintiff has shown neither that the land is such that it cannot be partitioned in kind, or that it would be "manifestly for the advantage of the parties" that the land be sold. Moreover, plaintiff has offered no evidence that the land would be more valuable sold as a whole. An appraiser testified that the property would bring significantly more per acre if divided and sold in parts than it would if sold as a whole. He also testified the tract ultimately partitioned to plaintiff would bring significantly more money if sold separately. This testimony is not disputed.

Plaintiff cites two cases to support his contention that partition in kind is not possible under the circumstances. He cites *Bevins v. George*, 255 S.W.2d 409 (Tenn. App. 1953). On the facts of that case, the Court simply found it was to the benefit of all parties that the farm be sold. Plaintiff also relies on *Medley v. Medley*, 454 S.W.2d 142 (Tenn. App. 1969). In that case, the Court found, due to the nature of the improvements, that it was in the best interest of the heirs that the land be sold for partition. Accordingly, these cases are distinguishable on the facts from this case.

Finally, plaintiff stresses the fact that the Commissioners state that "the entire farm could not be divided into four equal parts." However, this is not what the Commissioners were asked to do. The farm was not being divided into four parts, but rather two parts with the plaintiff getting one tract representing his one-fourth interest, while his brothers received one tract representing their combined three-fourths interest.

The report by the Commissioners is supported by material evidence. *See Hardin v. Cogswell*, 52 Tenn. 649 (1871). In making their report, they had a wealth of information before them, including appraisals and the tax map. Additionally, the Court heard the testimony from James Miller and Larry Miller regarding the characteristics of the land, and their opinions of value. We affirm the Court's conclusion that it was not in the parties' best interest to sell the land, and we affirm the Trial Court's judgment of partition.

Defendants raise the issue that the Trial Court erred in denying their motion to amend their answer in the partition case, to assert that plaintiff was not entitled to any interest in the real property. In their proposed counterclaim, they allege that they, James Miller and their father had entered into a contract concerning how the father's real property would be divided upon his death. They contend that under this alleged contract, James Miller and defendants agreed that only those brothers actively working on the Miller Brothers Dairy Farm at the time of their father's death would take any share in the real property.

The language in the proposed amendment to the answer clearly alleges a contract with Andrew Miller to include a certain provision in his Will.[2] The Trial Court did not err in characterizing this contract as a contract to make a will. T.C.A. §32-3-107 provides as follows:

> (a) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate can be established only by:
>
> > (1) Provisions of a will stating material provisions of the contract;
> > (2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
> > (3) A writing signed by the decedent evidencing the contract.

The statute is treated in *Junot v. Estate of Gilliam*, 759 S.W.2d 654 (Tenn. 1988), as "rigidly prescribing the requirements of a contract to make a will, not to revoke a will, or to die intestate." The Supreme Court held,

> It prescribes exclusive methods by which a contract to make a will, to revoke

a will, or to die intestate may be established . . . The provisions [of which] are exclusive and mandatory . . .

We conclude that the Trial Court properly exercised its discretion in denying defendants' motion to amend their answer.

## CORPORATE DISSOLUTION CLAIM

The Corporation is organized and existing under the laws of the State of Tennessee, and Plaintiff James Miller is a 25% shareholder in the corporation. His brothers each own 25% of the outstanding shares. The corporation is a farming operation. Larry, Garry and Allen serve on the Board of Directors, and Allen is president, with Larry being secretary.

The corporation has twice had its charter revoked by the Secretary of State pursuant to T.C.A. § 48-24-201 *et seq*. for failure to file annual reports or pay necessary taxes. Both times, the corporation applied for and was granted reinstatement.

This action is plaintiff's third attempt to dissolve the corporation. The first attempt occurred in 1993, and this Court upheld the Chancellor's denial of the complaint to dissolve. Later, plaintiff sought to file a second request for dissolution in the Circuit Court, which was denied.

The Trial Judge determined that by a preponderance of the evidence, plaintiff did not prove the corporation engaged in fraud, illegality or oppressive conduct, and held there were no grounds to support the dissolution of the corporation. *See* T.C.A. § 48-24-301.

A Court may dissolve a corporation only if the specific grounds listed in § 48-24-301(2) are established. Mere errors of judgment, mismanagement or negligence by those in control of the corporation are not sufficient grounds for a court's intervention in the corporation's internal affairs. *Range v. Tenn. Burley Tobacco Growers Ass'n*, 298 S.W.2d 545 (Tenn.App. 1955); *Orman v. Bransford Realty Co.*, 73 S.W.2d 713 (Tenn.

1934).

A court is not necessarily required to dissolve a corporation, upon a showing of statutory grounds. In its discretion, consistent with equitable principles, it may decide to leave the corporation intact. The statute authorizes the trial court to dissolve a corporation if certain conditions exist, but does not require it." *McLaren v. Falk*, 1988 WL 53353, p. 2 (Tenn.App. 1988).

Among the several charges made by James, are accusations that his brothers committed cruelty to animals by intentionally or knowingly failing to provide necessary food, water and care and shelter. James relies on the testimony of Dr. Tarrier, who testified in a December 1996 hearing, that the bulk of the herd was starved and near death. He provided the Court with several photographs of cattle carcasses on the farm at the time of that inspection.

Defendants counter that there was always abundant silage and hay for the cattle to eat, and that the heifers were somewhat underfed because they could not afford to buy grain supplement. Defendants also cite the testimony of four other people, including Jack Sofield of the Humane Society, who inspected the cattle in late 1996 and found no starved cattle. Tarrier stated in the later proceedings that on a subsequent inspection, he found the cattle to be in better shape.

The Trial Judge found against James on all of his contentions, and the evidence does not preponderate against the Trial Judge's findings. T.R.A.P. Rule 13(d).

We conclude the plaintiff failed to carry the burden of proof to establish statutory grounds for dissolution of the corporation. Accordingly, we affirm the Trial Court on this issue.

## ESTATE ATTORNEYS FEES

The final issue presented is did the Court err in approving payment of attorneys' fees out of the estate assets?

This matter was referred to the Clerk and Master for determination of which attorneys' fees should be approved and paid from the estate. The Clerk and Master found a total of $15,207.21, excluding the $500.00 previously paid, should be allowed and $3,808.60 was disallowed.

Specifically, the Master allowed the fees incurred by Larry Miller defending his appointment in the Will as Executor, up through the appeal to the Court of Appeals, but not including $350.00 spent filing an application to appeal to the Tennessee Supreme Court. He also allowed most of the fees incurred in determining the ownership of the certificates of deposit, but disallowed fees for conferences with the attorney representing Miller Brothers Corporation.

The report of the Clerk and Master was confirmed by the Trial Judge.

Findings concerning the fees charged by professionals assisting in the administration of an estate, involve mixed questions of law and fact and are, therefore, not subject to the concurrent finding rule. *Pearson v. Gillenwaters,* 99 Tenn. 446, 459-60, 42 S.W.9, 12 (1897).[3] More recently, the Supreme Court has explained the difference in the application of the concurrent finding rule by pointing out that:

> [T]he question of the value of services rendered by an attorney, or receiver, or other trustee, when the facts have been set forth in proper detail as to the actual services rendered, is a matter purely of opinion and estimate, as to which the witnesses testifying, and the Master himself, can have no better basis for a fair opinion, if indeed so good, as the members of an Appellate Court, possessed normally of training and experience which peculiarly fits them to form and to review such an opinion.

*Dale v. Hartman,* 157 Tenn. 60, 65, 6 S.W.2d 319, 321 (1928). *Accord, In re Estate of Wallace,* 829 S.W.2d at 700.

Andrew named his son, Larry, as executor of the estate, and Larry served in that capacity until he was removed by this Court in 1994. James had filed a petition to have Larry removed, and while the Probate Court refused to remove Larry, this Court found a conflict of interest and directed that Larry be removed.

Larry charged to the Estate his legal fees in defending his position as executor, and the Clerk and Master allowed the fees through the appeal to the Court of Appeals. James contests the payment by the estate of fees incurred at the appeals level, but does not dispute those fees incurred at the probate level. James contends these fees were not for the benefit of the estate, arguing that "the identity of the personal representative made no difference to the Estate - so long as the personal representative did not have a conflict of interest and administered the estate according to the will and the law." He cites *In re Estate of Wallace*, for the contention that where an executor does not prevail completely, or where he is partially to blame for bringing about unnecessary litigation, the executor, rather than the Estate, should be responsible for the executor's legal expenses. We conclude that James' argument is without merit.

There is no evidence to suggest that Larry Miller was acting in bad faith. He had reasonable grounds to believe that the portion of the Will appointing him executor would be upheld. In fact, the Probate Court found there was no reason to justify his removal, and it was appropriate to defend the Trial Court's decision upon appeal to this Court.

The final fees challenged by James were those expended in the suit regarding the certificates of deposit. However, Larry had a duty to participate in any suit involving the construction of the Will and the assets of the Estate. James argues that Larry's fees should be denied because he took the position that the assets were not a part of the Estate. However, the Court found that the certificates did, in fact, belong to the corporation, which was Larry's position in the case.

We affirm the judgment of the Trial Court in awarding the fees from the proceeds of the Estate.

The cost of the appeals is assessed to James Miller, except in the partition in kind suit, where the cost will be assessed one-half to James Miller and one-half to the

defendants in that case.

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.



_____
D. Michael Swiney, J.